City of Socorro v. Cook, 24 N. M. 202.

[No. 2107, May 6, 1918.]

# CITY OF SOCORRO v. COOK.

## SYLLABUS BY THE COURT.

1. The Socorro grant, being a grant of certain lands for the use and benefit of the inhabitants of the settlement of Socorro, was confirmed by Congress and determined by the court of private land claims to be a valid grant. The confirmatory act made no provision for a trustee to execute the trust. By chapter 77, Laws 1893, the Legislature of the territory of New Mexico named the city of Socorro and one Candelario Garcia cotrustees, and provided a certain procedure before the city council of the city of Socoro, for the purpose of determining the question as to the legal title to lands occupied and claimed within the limits of the grant, and also a procedure by which other lands might be allotted and sold to private individuals. Appellant's predecessor in title complied with all the provisions of the act, and the city council, as trustee, determined that such party was entitled to a deed to the lands in question in this suit. Twenty years later the city, by this action, sought to establish its right to a portion of the lands so conveyed to appellant's predecessor in title, under a claim now asserted that such lands, at the time of such determination and conveyance by the trustee, had been dedicated to the public for use as a public plaza. *Held*, that the city council of the city of Socorro, having been created a special tribunal by the Legislature for the purpose of investigating and determining who were entitled to deeds to lands within the limits of the grant, and after due notice and investigation, in pursuance of said act, had adjudged that appellant's predecessor in title was entitled to a deed for the premises in question, which was executed and delivered in pursuance of said finding, and no direct proceeding having been instituted by the city or by any one in its behalf to test the right of such claimant or his title to such lands within 12 months after the passage of the act or the assertion of said claim, as authorized and limited by the act, the question of appellant's predecessor's right and title to the premises in dispute became res adjudicata and not subject to collateral attack.                    P. 209

2. A decision rendered by an officer or a board of state or municipal officers, when acting judicially, and which has by

law the force and effect of a judgment, is a bar to further actions on the same matter between the parties or their privies.

P. 209

3.   While the city council of Socorro, acting in its municipal capacity, had no authority to convey away its streets, plazas, or parks, it did have authority, as trustee, acting under said legislative authority, to determine the question as to the right of the claimant to the legal title to lands claimed, and to pass upon the question as to whether such lands so claimed had been dedicated to the public, and as to whether the city or the claimant was entitled to a conveyance of the legal title.

P. 217

Appeal from District Court, Socorro County; Mechem, Judge.

Action for injunction by the City of Socorro against George E. Cook. From judgment perpetuating an injunction, defendant appeals. Reversed and cause remanded.

A. B. RENEHAN and D. K. SADLER, both of Santa Fe, for appellant.

It has often been held that the decisions rendered by an officer or a board of state or municipal officers, when acting judicially, has the force and effect of a judgment.

Amy v. May, 42 Pac. 1121; 23 Cyc. 1115; Sanders v. Whitesides, 10 Cal. 88; State v. Houston (Nebr.) 142 N. W. 796; Conn. & P. R. Co. v. Bailey, 24 Vt. 465; Hibben v. Smith, 62 N. E., 447; Smelting Co. v. Kemp, 104 U. S., 636 (640) ; 23 Cyc., 1115; Daniel P. Dugan v. Montoya, N. M. Reports No. 2098; Royal Jackson v. A. T. & S. F. R. R. Co., N. M. Rep. etc., No. 2021.

The city council of the city of Socorro having adjudged, after due notice and investigation in pursuance of chapter 77, laws of 1893, authorizing its action, that appellant's predecessor in title was entitled to a deed for the premises in question, and having executed and delivered a deed therefor, based upon such finding, and

no direct proceeding having been instituted by said city or by any one on its behalf, to test the right or title of such claimant within twelve months after the passage of said act or the assertion of said claim, as authorized and limited by the act, the question of said predecessor's right and title to the premises in dispute became *res adjudicata* and not subject to collateral attack in this proceeding.

Sec. 6, ch. 77, laws 1893; Kemp Lumber Co. v. Whitlatch, (N. M.) 153 Pac. 1050; King v. Foote, (Mont.) 23 Pac. 515; Amy v. May, (Utah) 42 Pac. 1121 (1132) and ca. ci.; Rose v. Stewart, 227 U. S. 530; King v. Thompson, (Okla.) 39 Pac. 466; McGrath v. Valentine, 167 Fed. 473.

The city is estopped to assert that its deed is void.

McQuillan on Municipal Corporations, Secs. 1159, 2312; City of Oakland v. Oakland Water Co., (Cal.) 124 Pac. 251; Sioux City v. C. & N. W. Ry. Co., Iowa, 106 N. W. 183; Searcy v. Yarnell, 47 Ark. 269, 1 S. W. 319; St. Vincent's Orphan Asylum v. Troy, 12 Hun. 317; City of Portland v. Indian Poulson Lbr. Co., 133 Pac. 829; Remy v. City of Chicago, 268 Ill. 597, 109 N. E. 679; Town of Montevalla v. School Dis. (Mo.), 186 S. W. 1078 and ca. ci.

M. C. SPICER, of Socorro, for appellee.

There can be no question but what the long continued use and occupancy of said land with the consent and approval of the people of the grant constitutes a common law dedication.

City of Cincinnati v. White's Lessee, 3 Pet. 438; New Orleans v. United States, 10 Pet. 652; Barclay v. Howard Lessee, 6 Pet. 498; Morgan v. Railroad Co., 96 U. S. 716.

Jurisdiction of inferior tribunal must affirmatively appear.

11 Cyc. 693; Terr. v. Valencia, 2 N. M. 108; Barruel v. Irwin, 2 N. M. 235; Armijo v. Comsrs., 3 N. M. 486; Smelting Co. v. Kemp, 104 U. S. 641; Davis v. Wicbolt, 139 U. S. 507, 529; Morton v. Nebraska, 21 Wall. 674, 675; Minter v. Crommelin, 18 How. 87; Burfenning v. Chicago etc. Ry. Co, 163 U. S. 321, 322; Wright v. Roseberry, 121 U. S. 519; Doolan v. Carr, 125 U. S. 627.

Where there is lack of power there can be no estoppel.

5 McQuillan Munc. Corps., Sec. 2309; Merrill v. Town of Monticello, 138 U. S. 673; Sec. 2, c. 77, 1. 1893; Town of Scarcy v. Yarnall, 1 S. W. 323; 23 Cyc. 621; Parkersburg v. Brown, 106 U. S. 487; Coler v. Comsrs., 6 N. M. 118.

### OPINION OF THE COURT.

ROBERTS, J.  This is an appeal from the judgment of the district court of Socorro county perpetuating an injunction restraining the appellant, George E. Cook, from fencing a certain lot or tract of land claimed by him under a chain of title reaching back to the city of Socorro itself, the appellee in this cause.

In 1892 the court of private land claims, at a session held in the city of Santa Fe, entered a decree confirming to the city of Socorro and one Candelario Garcia, in trust for the benefit of said city and the inhabitants thereof, four square spanish leagues of land, having for its center the center of the Roman Catholic church of the city of Socorro, and having for its boundaries one Spanish league distant from the center of said Roman Catholic church to each cardinal point of the compass. A large quantity of said land so confirmed was held in severalty by various persons claiming ownership thereof or interest therein, and no power or authority having been given to the said city or said Candelario Garcia, by the confirmatory act of Congress, to carry out the trust and make deeds to the persons owning portions of said grant in severalty to which they might show

themselves entitled, the territorial legislature of 1893 passed a special act known as chapter 77, laws of 1893, making it the duty of said city and said Candelario Garcia, cotrustees, or the duty of said city as sole trustee in case the said Candelario Garcia refused or declined to act, to receive applications from various persons for deeds to the portions of said grant claimed by them, and to investigate, and to issue a deed or deeds, in case the persons so applying showed themselves entitled thereto.

The special act, above referred to, defined a somewhat detailed procedure to be pursued by parties claiming deeds. The person applying for said deed was required to file an application therefor with the city council in writing, setting forth a description of the land claimed, the nature of his title thereto, which application must be signed and sworn to and filed with the city clerk. It thereupon became the duty of the city clerk to refer said application to the city attorney, who was required to investigate the application; and if upon investigation it appeared that said applicant was entitled to a deed, and no protest had been filed by the said city against the granting of the deed, it then became the duty of the city attorney, within ninety days after the filing of said application, to draw up a deed in proper form, and deliver the same to the city council, to be signed by the mayor and city clerk and said cotrustee.

Immediately upon the filing of said application, however, it became the duty of the city clerk to post a notice thereof giving the name of applicant, description of land, etc., said notice to be posted in a conspicuous place at the front door of the room of the city council, and to remain posted for three months. It was further provided that said notice should likewise be printed in both Spanish and English in some newspaper of general circulation in the city of Socorro, once each week, for a period of 90 days. Thereafter any person or persons, either on behalf of themselves or on behalf of the city,

who claimed an adverse interest in any part or portion of the land claimed by said applicant, or denied the applicant's right to a deed, had the right, within 90 days from the date of posting said notice, to file a protest in writing, setting forth the ground thereof with the city council. The individual, company, or corporation filing such protest was required to follow the same by a proceeding, in law or in equity, in the district court of said county, against the applicant for deed, to test the question of ownership of said land. It was provided, however, that if a protest should be filed on behalf of the city, then the city and trustee should institute and prosecute the suit in the name of and at the expense of said city. Such a suit by an individual was required to be instituted within 20 days of the filing of the protest, and it was further provided that, if the party filing the protest was in possession of the land, then the adverse party claiming same was required to institute a suit within the same time limit, and the city council was required to withhold the execution and delivery of any deed until the determination of said suit.

It was further provided that in case no protest should be filed against the granting of the deed applied for, within the time and manner provided, or if such protest should be filed and the party whose duty it is should fail or neglect to institute his proceeding as provided in the act, the deed should duly issue. It was provided, however, that should any person make application for a deed to any portion of said land within the limits of said grant, and the city council, upon investigation thereof, was not satisfied that the land for which a deed was asked was in fact owned by said applicant, then the deed should be withheld until the court should determine, in a proceeding properly instituted therefor, that the city should execute said deed to such applicant; or in case any individual, company, or corporation should be in possession of or claim any part or portion of the land within the limits of said grant to which they or it may be not entitled as against

the said city holding said lands in trust as aforesaid, then it became the duty of the city council to direct the city attorney to institute, on behalf of said city and said trustee, a proper proceeding in the district court in which the grant was situated to contest the right and title of said individual, company, or corporation to any of said lands so held or claimed, which suit was required to be instituted by said city against said parties within 12 months after such claim was set up to said lands by said individual, company, or corporation.

On July 2, 1895, the city of Socorro and Candelario Garcia, its cotrustee, after proper application therefor and due notice thereof, determined that Manuel Abeyta, the appellant's predecessor in title, was entitled to a deed for the land in controversy, and signed, sealed, executed, and delivered said deed to the said Abeyta. The deed contained a recital that "the said city council and the said Candelario Garcia, trustees, have found that the said party of the second part is entitled to said deed." It was admitted at the trial, in open court, that the land in controversy was within the terms of the decree of the court of private land claims, and was covered by the confirmation of the grant; and it was further admitted that the property in question was conveyed by mesne conveyances from Manuel Abeyta, the city's grantee, to George E. Cook, the appellant in this case.

The property in question was an unfenced lot adjoining the Manuel Abeyta block and lying alongside the plaza. The city claimed that the lot in question was a part of the public street and plaza of the city of Socorro. It based its right to a permanent injunction upon the claim that, at the time of the execution of the deed from the city to Manuel Abeyta, the property in question was dedicated to a public use by common-law dedication, and that the deed was therefore void. The city's counsel, in open court, expressly disclaimed any claim to the property by adverse possession either before or subsequent to the execution of the deed,

and stood upon the theory that the deed was void for the reasons just stated.

The court, at the conclusion of the trial, perpetuated the injunction which had been temporarily issued, and forever restrained the appellant from fencing, or in any manner obstructing or closing, or building upon or occupying, the tract of land in question, upon the theory that the deed to appellant's predecessor in title was void. From such decree this appeal is prosecuted.

[1, 2] On behalf of appellant it is insisted that the city council of the city of Socorro, having been created a special tribunal by the legislature for the purpose of investigating and determining who were entitled to deeds to lands within the limits of the grant, and after due notice and investigation in pursuance of said act, having adjudged that appellant's predecessor in title was entitled to a deed for the premises in question, which was executed and delivered in pursuance of such finding, and no direct proceeding having been instituted by the city or by any one in its behalf to test the right or title of such claimant within 12 months after the passage of said act, or the assertion of said claim as authorized and limited by the act, the question of appellant's predecessor's right and title to the premises in dispute became res adjudicata and not subject to collateral attack in this proceeding. A reading of chapter 77, Laws 1893, evidences the fact that it was the purpose of the legislature to authorize and define a procedure whereby the various claimants to lots or tracts of land in the Socorro grant might acquire deeds to the same upon establishing their right thereto, thereby vesting in such claimants the record title. Such act also limited the time within which such title might be attacked as to matters required to be shown by such claimants as a prerequisite to the issuance of the deed. Full opportunity for the assertion of any claims adverse to that of the applicant was given by the act. After application for the portion of such lands claimed by any applicant notice of such claim was required to be

posted for a period of three months, and notice thereof published in both English and Spanish in some newspaper of general circulation in the city of Socorro, once a week for a period of 90 days. The city attorney was also required to investigate, and it was provided that if, upon such investigation, the city attorney and city council were satisfied that the applicant was entitled to the deed and no protest had been filed, as authorized by the act, a deed should be executed and delivered to the applicant. The purpose of the act unmistakably was to provide a procedure whereby the question of the right to the legal title to the lands claimed under private ownership within the limits of the grant might be set at rest. Full opportunity was afforded for adverse claimants to assert and litigate their rights. Not only that, but private individuals were given the right, upon complying with certain prerequisites, to compel the city to litigate such rights; and, further, the city itself, without any protest on the part of private individuals, had the right to litigate with the claimant the question as to the right of such claimant to the lands or any portion thereof to which he asserted claim. The legal title to all of the land within the limits of the grant was vested in the city and Candelario Garcia, but the city council was constituted a special tribunal for the purpose of determining, in the absence of protest by private individuals, whether such claimant was entitled to a deed conveying to such claimant the legal title.

Section 6 of the act, in part, reads as follows:

"That should any person make application for a deed to any portion of said land within the limits of said grant, and should said city council upon investigation thereof, be not satisfied that the land for which such deed is applied for is in fact owned by said applicant, then said city council shall refuse to execute or cause to be executed a deed to said applicant for said land until the court shall determine, in a proceeding properly instituted therefor, that the city should execute said deed to said applicant; or in case any individual, company or corporation shall be in possession of or shall claim any part or portion of the land within the

limits of said grant, to which they or it may be not entitled as against said city holding said lands in trust as aforesaid, then the city council of said city shall direct the city attorney to institute on behalf of said city and said trustees a proper proceeding in the district court in which the said grant is situated to contest the right and title of such individual, company or corporation to any of said lands so held or claimed, which suit shall be instituted by said city against said parties within twelve months after the passage of this act or within twelve months after the said claim is set up to said lands by said individual, company or corporation."

From this it will be seen that it was required that the city council should satisfy itself upon an investigation that the applicant is entitled to the deed applied for, and, in case it determines that he is not entitled to the deed, it must refuse to execute it until the district court shall decide in a proper proceeding that the council improperly refused to execute and deliver such deed. Furthermore, it was provided, in case any person is in possession of, or shall claim any part of, the lands of said grant to which he is not entitled as against said city, then it is made the duty of the city council to direct the city of Socorro to institute suit on behalf of the city to contest the right and title to such claimant, and such suit was required to be instituted by the city against the claimant within 12 months from the passage of the act, or within 12 months from the time such claim is set up. This language clearly required the suit to be instituted within the time limited, and clearly prevented the institution of the same after the expiration of such time. By this act the legislature conferred upon the city council of Socorro certain quasi judicial powers. Section 2 of the act defines who were entitled to deeds, namely, such persons as have themselves, or by or through their grantors, been in actual, continuous, and undisputed possession of any of said lands for 10 years next preceding the date of the decree confirming the grant to said trustee, or who shall be the owner of any portion of said lands under any deed or conveyance from the original town of Socorro, or by

any conveyance from any of the original settlers or lot-holders, or by any conveyance from any legal authori-ty.  In no case was the city council authorized to issue a deed unless it found, upon investigation, that the ap-plicant brought himself within the class of persons en-titled thereto as defined in said act.  The power was conferred upon the city council to determine that fact in the absence of protest by the adverse claimant.  Its decision was not to be final, it is true, for it might be tested by direct proceedings instituted in the district court within the time limited.  The statute provided two periods of limitation.  The decision of the city council, it will be observed, became final in two in-instances, namely:  First, where it determined that the applicant was not entitled to the deed and no suit to test such decision was instituted within 20 days there-after; and, second, where, in the absence of protest and after investigation, it determined that the applicant was entitled to a deed.  This case falls within the last-mentioned class.  The legislature having conferred up-on the city council the authority to determine whether the original applicant to the lands involved in this liti-gation was entitled to a deed to the same, and said authority having determined said matter adversely to the city, the question of the applicant's title as against the city is res adjudicata, and is not open to collateral attack.  The courts have uniformly held that the de-cisions rendered by an officer or a board legally consti-tuted and empowered to settled the questions submitted to it, when acting judicially, have the force and effect of a judgment.  23 Cyc. 1115; Sanders v. Whitesides, 10 Cal. 89; State v. Houston, 94 Neb. 445, 143 N. W. 796, 50 L. R. A. (N. S.) 227; Conn. & P. R. Co. v. Bailey, 24 Vt. 465, 58 Am. Dec. 181; Hibben v. Smith, 158 Ind. 206, 62 N. E. 447; Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875.

In 23 Cyc. 1115, it is said:

"A decision rendered by an officer or a board of state or municipal officers, when acting judicially, and which has

by law the force and effect of a judgment, is a bar to further actions on the same matter between the parties or their privies.''

In Smelting Co. v. Kemp, supra, the Supreme Court of the United States, speaking of the effect of the findings of certain departmental officers, said:

"In the course of their duty, the officers of that department are constantly called upon to hear testimony as to matters presented for their consideration, and to pass upon its competency, credibility, and weight. In that respect they exercise a judicial function, and, therefore, it has been held in various instances by this court that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable execept by a direct proceeding for its correction or annulment.''

In Kemp Lumber Co. v. Whitlatch, 21 N. M. 88, 153 Pac. 1050, the Supreme Court of this state was dealing with a special act somewhat similar in its provisions to the one now being considered. Certain land was entered by the probate judge under the United States town-site act. Section 5520, Code 1915, enacted in 1882, provided that a probate judge holding the title of said lands in trust should convey, by good and sufficient deed, the title to each block, lot, and parcel to the persons, their heirs and assigns, who should have possession, or be entitled to the possession and occupancy, thereof, as their several rights and interests existed at the time of the entry of said lands. Section 5521 provided that said judge should, 30 days after entering said lands, give public notice of such entry. Section 5522 required every person claiming to be an occupant or entitled to occupancy or possession of such lands to file a statement in writing with the probate judge within 60 days after the first publication of said notice, showing the lands claimed by such person; and further provided that all persons failing to sign and deliver such statement within the time specified should be for-

ever barred of claiming or recovering such lands or
any interest therein.  The probate judge complied with
the statute as to giving notice by publication, and the
defendant, Whitlatch, did, within 60 days, file his state-
ment of claim, and duly obtained a deed for the prem-
ises in controversy.  The plaintiff filed no such state-
ment, nor did any one for it, though it claimed to have
succeeded to the right of occupancy of one Sawkins,
and to have asserted claim to the premises continuous-
ly since a date prior to the defendant's deed from the
probate judge.  This court held that the limitation in
the statute was an absolute bar to another suit to re-
cover the land.  Among other things, the court said:

"This particular section has not heretofore received
judicial interpretation by this court. In Cofield v. McClel-
land, 16 Wall. 331, 335 (21 L. Ed. 339), the court, re-
ferring to a statute almost identical with the one under
consideration in this case, said that: 'No language could
be more explicit to make the failure to deliver the state-
ment within the time specified a bar, an absolute bar, to
the recovery of the same, however strong might be the
equitable claim to the land so lost."

The courts of the different states have been called
upon in not a few cases to construe the effect of stat-
utes somewhat similar to the one under consideration,
and to determine the effect of the trustees' decision that
an applicant is entitled to a deed and the deed issued
in conformity with such determination.  In Ming v.
Foote, 9 Mont. 201, 23 Pac. 515, decided by the Su-
preme Court of Montana, it was held that the act of
the Montana legislature, passed to carry out acts of
Congress relating to grants of town sites to probate
judges in trust for the inhabitants, vested the probate
judge with quasi judicial powers, and that a deed from
him could not be collaterally assailed in an ejectment
suit by showing that the preliminary steps required to
give authority to convey a lot were not taken.  Among
other things, the court said, after quoting certain per-
tinent provisions of the act:

"These are the expressions in the last-cited act supra. They all point irresistibly to the intent to invest the probate judge with quasi judicial' functions, as to a limited subject-matter. This conclusion arrived at brings promptly to our aid the rule of law that the judgment of a special judicial tribunal, with jurisdiction to hear and determine questions of fact presented' to it, such as the United States land office, is conclusive, when brought to notice in a collateral proceeding."

In that case, as here, it was urged that the deed was void, though for a different reason. Here it is insisted that the deed was void for want of authority in the council to make the same. There it was insisted that the deed was void because of the provision of the act of Congress to the effect that any act of said trustee (probate judge) not made in conformity with the rules and regulations therein alluded to shall be void, and the fact that certain preliminary steps were not taken was set up in avoidance of the deed. The court properly refused, however, to hold with this contention, and quoted approvingly from the opinion of Mr. Justice Field, in Smelting Co. v. Kemp, 104 U. S. 636, 645, (26 L. Ed. 875), as follows:

"So, also, according to the doctrine in the cases cited, if the patent be issued without authority, it may be collaterally impeached in a court of law. This exception is subject to the qualification that when the authority depends upon the existence of particular facts, or upon the performance of certain antecedent acts, and it is the duty of the land department to ascertain whether the facts exist, or the acts have been performed, its determination is as conclusive of the existence of the authority against any collateral attack as is its determinaton upon any other matter properly submitted to its decision."

Amy v. Amy, 12 Utah, 278, 332, 42 Pac. 1121, 1132, decided by the Supreme Court of Utah, was another case in which the court was dealing with the town-site act and the effect of the decision of the probate judge on the question of occupancy and the right to a deed to the premises claimed. The act of the territorial' legislature, or rather the pertinent provisions thereof, describing the necessary procedure for the securing of

a deed, are set out in the opinion, and are somewhat similar to the provisions in the act being considered. The court held that the determination by the probate judge of a claimant's right to a deed was conclusive in that proceeding, and could not be attacked. It said:

"It was the duty of the probate judge to ascertain the question of occupancy, and his adjudication and the deed issued to decedent's mother by the mayor of Salt Lake City are conclusive in this collateral attack."

As stated by the Supreme Court of the United States in the case of Smelting Co. v. Kemp, when the authority to act depends upon the existence of particular facts, and the officer or tribunal must, before assuming to act, determine the existence of any of such facts, the determination that it has the authority to act is just as conclusive upon collateral attack as any other question determined by it.

The authority of the city council to make and execute the deed in question is the sole subject of attack by the appellee. In open court its counsel expressly disclaimed any right to the premises in question by virtue of adverse use either before or subsequent to the deed to appellant's predecessor in title. It claimed that the property in question had acquired a common-law dedication, for which reason the city council was without authority to make the deed in question. But the question as to whether the said premises had acquired a common-law dedication was one of the very things submitted to said council for its determination, and, as shown by the record and the city council's deed, this very question was considered in council meetings and determined adversely to such claim. We quote the record from the testimony of James J. Leeson, who was a member of the city council at the time the matter was being considered by the city council under the application of Manuel Abeyta for a deed to said premises. He testified as follows:

City of Socorro v. Cook, 24 N. M. 202.

"Q. You spoke of a deed to Manuel Abeyta. Were you on the council when that deed was given? A. Yes, sir. Q. The matter was up for quite a long time, was it not? A. Yes, sir. Q. There were various hearings on the matter? A. Yes, sir. Q. It was then claimed it was a public square, had always been used as a public square, and you so contended in the council? A. Yes, sir. Q. And there were others contending for the same thing? A. Yes, sir. Q. Notices were given of these hearings, were they not—printed notices posted? A. Well, that I don't know, but it was not done like it is now. At that time there were five parties here in town got deeds. Q. There was notice of a hearing given to parties on this question of giving deeds? A. It came up in regular session of the council. Q. And the council, after hearing, ordered the deed given? A. Yes, sir. Q. And it was given? A. It was given."

Thus it will be seen that, in reaching its determination that the applicant, Manuel Abeyta, appellant's predecessor in title, was one of the class of persons described in section 2 of the act in question who showed himself entitled to a deed to the premises claimed, the city council considered and determined adversely to the city the contention now urged by it, i. e., that the premises had a common-law dedication; and having determined such fact, and that it had authority to make and deliver such deed to Manuel Abeyta, under whom the appellant claims, it is not now open to said city, after the lapse of more than 20 years, to impeach the deed of its council in this collateral proceeding.

[3] Appellee contends that the city council of Socorro, while having authority to pass title to lands within the limits of the grant, was given no authority by the act in question to convey any of the streets or lands dedicated to a public use within the limits of the city of Socorro, hence it had no power to issue a deed to a part of the public plaza.

It is true the city council, acting on behalf of the city, had no such power or authority; but it did have the right and power, and it was made its duty, as trustee, to pass upon the question as to whether or not the land claimed by any applicant fell within the description of the lands which it was authorized to give title

to. It had the power and it was its duty to decide and determine whether or not the land claimed by Abran Abeyta, appellant's predecessor, had been held by Abeyta or his predecessors in title under the terms and conditions prescribed in the act. The city of Socorro, or a prescribed number of its citizens, had the right to litigate out with the claimant the question as to whether the lands claimed were a part of the public plaza and whether Abeyta was entitled to a deed to the same. After investigation and in strict compliance with the statute, it determined that the real estate in question was not a part of the public plaza, and that Abeyta was entitled to a deed to the same.

The deed to Abran Abeyta, appellant's predecessor in title, would, of course, have been absolutely void if the city of Socorro, as trustee, had not become invested with the legal title to the real estate in question. Such a grant is absolutely void where the trustee has no title to the thing granted or was without authority to issue the deed. Polk v. Wendal, 9 Cranch, 87, 3 L. Ed. 665. But in this case the legal title to the fee in the streets and other public places within the city of Socorro was in the city in its capacity as trustee and its cotrustee. The legal title to the lands so situated was in exactly the same status as was the legal title to all the other lands within the grant. It rested in the trustee. The city, as trustee, was invested with the power and had the jurisdiction in certain enumerated instances, its determination in this case being within such, to determine the question as to the party entitled to the legal title, and to execute a deed conveying such legal title to such party. Hence we see that the trustee in this case had the legal title to the real estate, now claimed by the city in its corporate capacity as a part of the plaza in 1895, when the deed was issued to Abeyta by the trustee. It may be true that the equitable title to the premises was in the city of Socorro for the use of the public, but the act was passed for the purpose of vesting the owner of the equitable title with the legal title, and parties claim-

ing the equitable title were required to assert their claim in the procedure provided by the act.

If the argument advanced by appellee should be accepted as sound, it would be established that the city council, as a special tribunal created by the legislature, would have no authority to pass the legal title to a claimant, who had not in fact resided upon the land for the requisite length of time, or who did not hold under a deed of conveyance from the city, executed as specified in the act. The city council had no authority to pass title to any lands to a claimant who did not come within the terms of the act. Likewise, as contended by appellant, it would have no authority to. pass title to a private individual to any part of the lands theretofore dedicated to a public use; but in this instance, as in the case where a claim is asserted to lands not so dedicated, it became and was the duty of the council to determine, in the absence of protest, whether such claimant was entitled to a deed, and, in order to determine this question, necessarily it was required to ascertain and pass upon all other questions incidental to the determination of the right of the claimant to the deed. Presumptively it investigated and determined that the land claimed by Abeyta was not a portion of the public plaza, as it would determine in case a claim was made to land within the limits of the grant upon the question as to whether the applicant came within the terms of the act. Its determination in the one case, as in the other, would be equally invulnerable against a collateral attack. To hold that the question might now be litigated as to whether this land was in fact a part of the public plaza would imply that the right of any claimant to lands determined by the city council could now be opened up, upon a showing that such claimant was not entitled to a deed to the land, and the result would be endless litigation over the question of title to lands within the grant.

In the case of United States v. Wildcat, 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024, a question arose

as to the title to land allotted by the Dawes Commission. An allottment had been made to Barney Thlocco, a Creek Indian. It was alleged in the bill filed by the United States against the heirs of Thlocco that the allotment was void because the allottee was dead upon the date which was controlling as to the right to the allotment. The court said:

"For this purpose it determined to divide the lands among those living on April 1, 1899, and constituted a tribunal to investigate the question of membership and consequent right to share in the division. We think the decision of such tribunal, when not impeached for fraud or mistake, conclusive of the question of membership in the tribe, when followed, as was the case here, by the action of the Interior Department confirming the allotment and ordering the patents conveying the lands, which were in fact issued. If decisions of this character may be subject to annulment in the manner in which the government seeks to attack and set aside this one, many titles supposed to be secure would be divested many years after patents issued, upon showing that the decision was a mistaken one. The rule is that such decisions are presumably based upon proper showing, and that they must stand until overcome by full and convincing proof sufficient, within the recognized principles of equity jurisdiction in cases of this character, to invalidate them. Maxwell Land-Grant Case, 121 U. S. 325, 379, 381; 30 L. Ed. 949, 958, 959, 7 Sup. Ct. Rep. 1015; Colorado Coal & I. Co. v. United States, 123 U. S. 307, 31 L. Ed. 182, 8 Sup. Ct. Rep. 131."

The deed herein is not attacked upon the ground of fraud or other equitable ground which would warrant the court in setting aside the same. We think appellants title to the land was invulnerable against the attack made. For this reason the judgment is reversed, and the cause remanded to the district court for further proceedings in accordance with this opinion; and it is so ordered.

HANNA, C. J., and PARKER, J. concur.