459 P.2d 141

WESTLAND DEVELOPMENT CO., Inc.,
(NSL), a New Mexico Corporation,
Petitioner-Appellee,

v.

Ambrosio SAAVEDRA, Epimenio Herrera,
Fred Griego, Rosendo Garcia, Isidro San-
chez, Eddie Sanchez, and Arturo Herrera,
Members of the Board of Trustees of the
Town of Atrisco, a corporation, Respond-
ents-Appellants.

No. 8592.

Supreme Court of New Mexico.

Sept. 22, 1969.

**616**

Carlos Sedillo, Dale B. Walker, Albuquerque, New Mexico, for respondents-appellants.

Lorenzo A. Chavez, Avelino V. Gutierrez, Albuquerque, for petitioner-appellee.

## OPINION

NOBLE, Chief Justice.

The King of Spain made a community land grant to the inhabitants and settlers within the boundaries of the Atrisco Grant. After the treaty of Guadalupe Hidalgo, the Congress of the United States recognized the validity of the grant by the former sovereign and issued its patent to the Town of Atrisco. N.M.Laws 1891, ch. 86 and N.M.Laws 1897, ch. 54, were enacted to provide for the management, control and disposition of the common lands of the grant. They provided that the "owners and proprietors" of the grant could elect to form themselves into a "body corporate and politic" for those purposes. The affairs of the corporation were managed by a Board of Trustees in this case known as "The Board of Trustees of the Town of Atrisco." The 1891 and 1897 New Mexico statutes were repealed by ch. 3, Laws of 1917, which substantially re-enacted the 1897 statute respecting management of community grants. The 1917 statute expressly continued community grant corporations organized under the 1891 and 1897 laws, fixing their powers and duties and providing for their procedures. See Armijo v. Town of Atrisco, 56 N.M. 2, 239 P.2d 535.

Ch. 43, Laws of 1967 (§ 8–2–19, N.M. S.A.1953 [Supp.1967]) authorizes certain "owners and proprietors" of community grants to submit articles of incorporation and bylaws for incorporation of a traditional corporation to hold the title to and manage the affairs of such community grant in place of the trustees organized under the 1891 laws. The 1967 statute provides for a call for and the holding of a meeting of the "owners and proprietors" of the grant, at which meeting the proposed plan of conversion shall be approved or rejected. The statute reads: ·

"Twenty [20] or more owners and proprietors of record of a corporation organized under Laws 1891, chapter 86, may prepare proposed articles of incorporation and bylaws and a plan of conversion for the purpose of converting the existing corporation into a corporation organized under the general corporation law of this state. Upon notice, the proposers shall call a meeting of all owners and proprietors of record entitled to vote in the affairs of the existing corporation. The notice shall be published in English in a newspaper of general circulation in a county in which the existing corporation is located, once a week for three [3] consecutive weeks, the last publication to be not more than thirty [30] days prior to the date set for the meeting. Similar publication shall also be made in Spanish if there is a Spanish language newspaper of general circulation in the county. The proposed articles of incorporation and bylaws and the plan of conversion shall be presented at the meeting, and, if approved by a vote of the majority of the owners and proprietors of record present at the meeting, then, upon the filing of the articles of incorporation and bylaws with the state corporation commission and the issuance of a certificate of incorporation, the corporation organized under Laws 1891, chapter 86, is converted into a domestic corporation authorized to do business and entitled to all privileges and immunities of a domestic corporation organized under the general corporation laws of this state."

Acting under the authority and in accordance with the provisions of the statute, the requisite number of "owners and proprietors" of the Atrisco Grant proposed that a domestic corporation be formed to manage, hold title to, and conduct the affairs of the grant. Articles of incorporation and bylaws for Westland Development Company were prepared and submitted to those "owners and proprietors" of the grant who attended a meeting called for that purpose. The trustees assert that there are 1832 "owners and proprietors" of the

Atrisco Grant; that 1111 of such owners actually attended the meeting called to consider the formation of the corporation authorized by the 1967 legislature; and that 583 of such persons voted in favor of the creation of Westland Development Company to manage the grant affairs, and 528 voted against such proposition. The trustees refused to transfer title to the grant lands or to turn over to the new corporation their books and records. Mandamus was brought to compel these transfers, resulting in a permanent writ from which this appeal has been taken.

■ By their first point the trustees argue that § 8–2–19, N.M.S.A.1953 (Supp. 1967), violates due process in three ways. First, they argue that:

"the rights to this character of a legal entity became vested at the time of its creation, and that a statute which now attempts to change its character from that of a corporation for the management of a community land grant to that of a domestic stock corporation is in violation of the fifth and fourteenth amendments to the Constitution of the United States and Article II Section 18 of the Constitution of New Mexico in that it is an attempt by the legislature to divest the Town of Atrisco of its vested rights without due process of law." Appellants' Brief-in-Chief, p. 8.

In regard to the Due Process Clause of the fourteenth amendment and that of the New Mexico Constitution, a state, through its police power, may make reasonable regulations of corporations, 14 Fletcher, Cyclopedia Corporations §§ 6708–14 (Perm. ed. 1965); cf. Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., 68 N.M. 228, 360 P.2d 643, including alteration or amendment of corporate charters if that power has been duly reserved by the state, as was done in New Mexico (N.M.Const. art. XI, § 13). Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 517, 4 L.Ed. 629 (1819) (Concurring opinion, Story, J.); Greenwood v. Union Freight Co., 105 U.S. 13, 26 L.Ed. 961

(1882); Melaven v. Schmidt, 34 N.M. 443, 283 P. 900. The trustees have not indicated in what manner the New Mexico statute might be considered an unreasonable regulation or restriction. Indeed, rather than being a restriction, the Act grants an additional right to land grant corporations by allowing them to form domestic stock corporations, if a majority of the owners so vote.

■ The second constitutional argument of the trustees is that § 8–2–19, supra, lacks due process because of its failure to require personal service or mailing of written notice of the meeting, and failure to provide for absentee voting. The Act under which the Grant was incorporated (§ 8–2–1 to 8–2–18, N.M.S.A.1953) before § 8–2–19, which offends appellants, was added, provided only for publication of notice (§ 8–2–4). It did not require mailing of written notice of meetings nor for absentee voting or proxy voting. There is no inherent right in a stockholder of a corporation to vote by proxy, 18 C.J.S. Corporations § 550.

■ Concerning the question of notice and hearing on the amount of assessments to be levied against property, we have consistently held that no constitutional rights are violated so long as notice is given and an opportunity afforded to be heard before property is charged with liens and special assessments. The fact that the legislature may prescribe the notice to be given in proceedings such as this, subject to the condition that the notice required must conform to the requirements of due process by affording an opportunity to be present and vote on the question presented, is well established. This rule, however, only requires that the reasonable notice must be given and a fair opportunity afforded to consider the proposal and to approve or object to it. See Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1, 70 A.L.R. 1261; Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683. The challenged act appears to us to give reasonable notice and a fair opportunity to the "owners and proprietors"

of the grant to attend the meeting at which the proposed corporation was considered.

The third constitutional argument of the trustees is that they were denied due process because the statutory procedure for divesting a right must be substantially followed. They contend that § 8–2–7, N.M.S.A.1953, was not followed because it provides for sale or conveyance of common property only after approval of two-thirds vote of the members. We find no merit to this argument. In the first place, unlike the situation in Armijo v. Town of Atrisco, 62 N.M. 440, 312 P.2d 91, no determination of rights of beneficial interest in the Grant is made here, nor is there any deprivation of a property right. Appellants claim that the articles of incorporation of appellee corporation authorizing the issuance of three classes of stock, two of which would be sold, diminishes the equity of the heirs. This "equity" could have been diminished by sale, mortgage, or otherwise under § 8–2–2, N.M.S.A.1953, by the trustees upon approval of a majority of the heirs present at a mass meeting. The new corporate procedure, which was adopted by a majority at the meeting, preserved this requirement, and indeed may prove beneficial, rather than harmful, to the heirs' interests. In the second place, the procedure of § 8–2–7, N.M.S.A.1953, was not followed because § 8–2–19, N.M.S.A.1953 (Supp.1967) was the applicable statute. Whatever is meant by "sale" and "conveyance" in § 8–2–7 does not include the procedure enacted to change the character of the corporation itself. To hold otherwise would produce the absurd implication that a land grant corporation could have been converted into a domestic stock corporation by § 8–2–7 even before the enactment of § 8–2–19. It would also produce a rather unexplainable conflict between the two provisions. We are committed to the proposition that the legislature is composed of reasonable men and will thus interpret its enactments to accord with common sense and reason. Sandoval v. Rodriguez, 77 N.M. 160, 420 P.2d 308. Accordingly, we hold that § 8–2–19, N.M.S.A.1953 (Supp.1967) is constitutional insofar as the objections raised by the trustees.

Under their second point the trustees argue that the meeting to consider the formation of a new corporation was invalid because there was pending another action to determine the qualifications of persons entitled to distribution of the assets of the grant. The trustees assert that in 1962, a partial judgment was entered in another cause in which the owners and proprietors of the grant were determined, but say that this judgment left open for a later determination the question of the qualifications of those entitled to distribution of the assets of the grant. They have neither pointed to the place where that judgment appears in the record nor has our search found such a judgment. Thus, the judgment is not before us. We do not know what issues were before the court, nor what, if anything, was reserved.

Questions for review by an appellate court are established only by the record, and any fact not so established is not before an appellate court. Supreme Court Rule 14(1) (§ 21–2–1(14) (1), N.M.S.A.1953); Richardson Ford Sales v. Cummins, 74 N.M. 271, 393 P.2d 11. It is the duty of a litigant seeking review to see that a record is properly prepared and completed for review of any question by an appellate court. Supreme Court Rule 14(3) (§ 21–2–1(14) (3), N.M.S.A.1953); Berkstresser v. Voight, 63 N.M. 470, 321 P.2d 1115; Buchanan v. Carpenter, 65 N.M. 389, 338 P.2d 292. In the state of the record, the point relied upon presents no question for review.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

MOISE, COMPTON and WATSON, JJ., and OMAN, Judge, Court of Appeals, concur.